UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-09-xr-90128 EMC |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE REQUEST FOR EXTRADITION UNDER ARTICLE 7 OF EXTRADITION TREATY** |
| JOSE GUADALUPE CRUZ GARFIAS, | |
| Defendant. | **(Docket No. 24)** |

Currently pending before the Court is Jose Guadalupe Cruz Garfias's motion to dismiss the request for his extradition under Article 7 of the Extradition Treaty between the United States and Mexico. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel and all evidence of record, the Court hereby **DENIES** the motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The Judge of First Instance in Criminal Matters of the Judicial District of Patzcuaro, Michoacan, Mexico, issued two warrants for the arrest of Jose Guadalupe Cruz Garfias ("Mr. Garfias") for charges of homicide in criminal cases 8/99 and 17/99. *See* Docket No. 1, Diplomatic Note 07393 at 1.  The arrest warrants for criminal cases 8/99 and 17/99 were respectively issued on January 22, 1999 and February 2, 1999, respectively. *See id.*, Diplomatic Note at 2. The arrest warrant for criminal case 8/99 alleges on November 22, 1998, Mr. Garfias shot victim, Bulmaro Cervantes Cruz, seven times in a store in Mexico. *See* Docket No. 24, Mot. to Dismiss, Attach. 4 at JGCG-0100. The arrest warrant for criminal case 17/99 alleges on November 26, 1998, Mr. Garfias and a co-defendant were responsible for the crime of homicide against victims Rosendo Cervantes

1  Cruz ("Mr. Cruz") and J. Guadalupe Cruz Mendoza ("Mr. Mendoza").[1] *See id.*, Attach. 5 at JGCG-
2  0181. The arrest warrant further states, according to witness testimony, that Mr. Garfias was seen
3  disarming the victim, who was lying on the ground, and shooting him three times with that firearm.
4  *See id.,* Attach. 5 at 0180.

5  On May 24, 2002, Mexico petitioned the United States for the provisional arrest for
6  international extradition purposes of Mr. Garfias. *See* Diplomatic Note at 1. On October 16, 2006,
7  under the Extradition Treaty between the United States of the America and Mexico ("Extradition
8  Treaty"), Mexico requested the extradition of Jose Guadalupe Cruz Garfias ("Mr. Garfias") to
9  answer the charges of homicide. *See id.* On March 3, 2009, the government filed a complaint for
10 arrest with a view toward extradition. *See* Docket No. 3, Compl. On March 25, 2009, Mr. Garfias
11 was arrested, and made his initial appearance the following day. *See* Docket No. 24, Bosworth Decl.
12 ¶ 3. Mr. Garfias has filed a motion to dismiss the request for his extradition under Article 7 of the
13 Extradition Treaty. *See* Docket No. 24 (Mot. to Dismiss).

14 Article 7 of the Extradition Treaty states, "[e]xtradition shall not be granted when the
15 prosecution or the enforcement of the penalty for the offense for which extradition has been sought
16 has become barred by lapse of time according to the laws of the requesting or the requested party."
17 Docket No. 1, Extradition Treaty. Mr. Garfias claims prosecution is barred because: (1) the lapse of
18 time in prosecution of criminal cases 8/99 and 17/99 violates the Sixth Amendment's Speedy Trial
19 Clause; and (2) the lapse of time in prosecution of criminal case 17/99 violates the applicable statute
20 of limitations. Mr. Garfias does not argue that the statute of limitations bars prosecution for criminal
21 case 8/99. *See* Mot. to Dismiss. Mr. Garfias also does not dispute that probable cause has been
22 established as a matter of law. *See id.* at 1, n. 2.
23 ///
24 ///
25 ///

---

[1] Although the Diplomatic Note indicates that the homicides in criminal case 17/99 occurred on November 17, the supporting documents, *e.g.*, the arrest warrant, complaint, witness testimony, state the homicides occurred on November 26, 1998.

2

## II. DISCUSSION

In his motion, Mr. Garfias argues that the request for extradition should be denied because the lapse of time (1) violates the Sixth Amendment's right to a speedy trial, and (2) violates the statute of limitations for the 17/99 criminal case.

A.  Sixth Amendment's Speedy Trial Clause

In his motion, Mr. Garfias argues that the request for extradition should be denied because the lapse of time between his alleged offenses, which occurred in 1998, and his arrest, which occurred in 2009, violates his right to a speedy trial. Specifically, Mr. Garfias claims he has a right to a speedy trial because Article 7 of the Extradition Treaty invokes the Sixth Amendment to the U.S. Constitution.

Article 7 of the Extradition Treaty bars prosecution due to a "lapse of time according to the laws of the requesting party or the requested party." Extradition Treaty. Mr. Garfias claims that the Sixth Amendment may be invoked because the "lapse of time" provision refers to the "laws" of the requested party, *i.e.*, the laws of the United States, including the Sixth Amendment.

The Ninth Circuit has not expressly stated that the "laws" of the requesting party under the lapse of time provision do not include the Sixth Amendment. However, the "lapse of time" provision has commonly been interpreted to refer to the statute of limitations of the countries involved. The Ninth Circuit recently examined the same provision, Article 7 of the Extradition Treaty, and found that, "[f]or [the defendant] to be extraditable, the prosecution against [him or] her must fall *within the statute of limitations* according to the laws of both the requesting party, i.e. Mexico, and the "requested party," i.e., the United States." *Causbie Gullers v. Bejarano*, 293 Fed.Appx. 488, 489 (9th Cir. 2008) (citing *Clarey v. Gregg*, 138 F.3d 764, 766 (9th Cir. 1998) (emphasis added). *See also In re Extradition of Kraiselburd*, 786 F.2d 1395, 1397-1398 (9th Cir. 1986) (the Sixth Amendment was not invoked by the petitioner as an applicable "law" of the requested party even though the treaty provision with Argentina contained the same "lapse of time" provision).

The Ninth Circuit has, however, addressed the broader issue of whether constitutional protections, such as speedy trial or due process rights, are available to defendants in extradition

proceedings, and concluded "the constitution does not of its own force impose on foreign governments the obligation to act speedily in seeking extradition." *See Kraiselburd*, 786 F.2d at 1397-1398; *see also Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984) ("it has long been settled that United States due process rights [i.e., the right to speedy trial] cannot be extended extraterritorially") (citing *Neely v. Henkel,* 180 U.S. 109 (1901). Indeed, the Ninth Circuit has held that even when a treaty provision grants the person sought the "right to use such remedies and recourses as are provided by [the law of the requested state, i.e. United States]," the defendant cannot invoke the constitutional right to a speedy trial. *See Kraiselburd*, 786 F.2d at 1397-1399; *Kamrin*, 725 F.2d 1228. The "remedies and recourses" provision only obligates the requesting party to comply with the requested party's statute of limitations, not the requested party's constitutional protections afforded to criminal defendants. *Kraiselburd*, 786 F.2d at 1398; *Kamrin*, 725 F.2d at 1227-28. While the Ninth Circuit has not ruled directly on the question, whether the "lapse of time" treaty language incorporates Sixth Amendment rights, the thrust of these decisions is inconsistent with Mr. Garfias's argument herein.

Moreover, other circuit courts have held that "constitutional procedural protections which by their terms are applicable only in criminal cases . . . are unavailable in extradition proceedings[;] [a]ccordingly, there is no Sixth Amendment right to a speedy trial in extradition cases. *Martin v. Warden*, 993 F.2d 824, 829 (11th Cir. 1993) (citing *Sabatier v. Dabrowski*, 586 F.2d 824, 829 (11th Cir. 1978); *Jhirad v. Ferrandina*, 536 F.2d 478, 485 n. 9 (2d Cir. 1976); *In re Extradition of Burt*, 737 F.2d 1477, 1486 (7th Cir. 1984). Indeed, the Eleventh Circuit has specifically held, "the 'lapse of time' provision refers to the running of the statute of limitations and not to a defendant's Sixth Amendment right to a speedy trial." *Yapp v. Reno*, 26 F.3d 1562, 1567 (11th Cir. 1994). Although one district court in the Eleventh Circuit has previously held that the "lapse of time" provision invokes the Sixth Amendment, *see In re Extradition of Mylonas*, 187 F. Supp. 716, 721 (N.D. Ala. 1960), the Eleventh Circuit subsequently overruled this holding. *See Martin v. Warden*, 993 F.2d 824, 829 (11th Cir. 1993) ("We expressly disapprove of the district court's holding [in *Mylonas*] that a defendant has a Sixth Amendment right to a speedy extradition."); *see also Yapp v. Reno*, 26 F.3d

at 1567 ("Whether the holding in *Mylonas* is construed as interpretation of the Constitution or interpretation of a treaty, we do not find it persuasive.").

Accordingly, the Court rejects Mr. Garfias's claim that the "lapse of time" provision in Article 7 of the Extradition Treaty incorporates the Sixth Amendment's right to speedy trial.

B.  <u>Statute of Limitations for Criminal Case 17/99</u>

Mr. Garfias makes a two part argument to claim that the statute of limitations has run for his prosecution of criminal case 17/99.  First, Mr. Garfias argues that he is charged with homicide, not aggravated homicide under criminal case 17/99, so the five-year statute of limitations under federal law applies.  Mr. Garfias then argues that he may not be extradited under Article 7 of the Extradition Treaty because the five-year statute of limitations for criminal case 17/99 has expired.

1.  <u>Applicable Statute of Limitations for Criminal Case 17/99</u>

When determining which statute of limitations under U.S. law applies, the Court looks to the substantive offense which is most analogous to the charged offense and applies the U.S. statute of limitations for that analogous offense.  *See In re Extradition of Suarez-Mason*, 694 F. Supp. 676, 686 (N.D.Cal. 1988).  In the instant case, the arrest warrant for Mr. Garfias for criminal case 17/99 was ordered for "the crime of HOMICIDE," as provided by Article 260 of the Penal Code of the State of Michoacan.  *See* Mot. to Dismiss, Attach. 5 at JGCG-0180-0181.  Article 260, in full, states, "[a]ny person who takes the life of another human being commits the crime of homicide."  *See* Mot. to Dismiss, Attach. 7.  The extradition request, *see* Diplomatic Note at 2, and the complaint filed by the government, *see* Compl. ¶ 4, further state that an arrest warrant for Mr. Garfias was issued for the crime of homicide, "set forth and punishable under Article 260 and 267 of the Penal Code for the State of Michoacan."  Article 267 states, in full, "an imprisonment penalty from twenty to forty years shall be imposed on the person who commits an aggravated homicide.  *See* Mot. to Dismiss, Attach. 7.

Both Mr. Garfias and the government agree that aggravated homicide is most closely analogous to first degree murder in the United States.  Under U.S. law, murder is the "unlawful killing of another human being with malice aforethought" and first degree murder is murder perpetrated by any "willful, deliberate, malicious, and premeditated killing." 18 U.S.C. § 1111(a).

5

First degree murder is a capital offense, *see* 18 U.S.C. § 1111(b), for which there is no statute of limitations. *See* 18 U.S.C. § 3281; *see also Kraiselburd*, 785 F.2d at 1397-1398 ("extradition for murder is not barred by the statute of limitations") (*citing Quinn v. Robinson*, 783 F.2d 776, 816 (9th Cir. 1986). Other homicides are subject to a five-year limitation period. The parties' understanding as to the relevant limitations periods is correct.

Mr. Garfias contends that because the arrest warrant does not charge him with "aggravated homicide" under Article 267, his offense is non-capital so the Court should apply the five-year statute of limitations under 18 U.S.C. § 3282. In particular, Mr. Garfias asserts that the absence of an "aggravated homicide" charge in the arrest warrant implies that the Mexican government did not intend to charge him with aggravated homicide. However, the general charge of "homicide" under Article 260, used as an umbrella term, does not preclude a specific type of homicide, *e.g.*, "aggravated homicide" under Article 267 or "simple homicide" under Article 264. *See* Mot. to Dismiss, Attach 7. Even if the term "aggravated homicide" was not specifically mentioned in the arrest warrant, the extradition request later specified that Mr. Garfias was charged with homicide, "set forth and punishable *under Article 260 and 267*. Diplomatic Note at 2 (emphasis added).

More significantly, when a U.S. court determines which offense is the most analogous to the one charged by the foreign country for extradition purposes, the court should focus on the "nature of [the] conduct," not just the charging label applied in the requesting state. *See Clarey v. Gregg*, F..3d 764, 766 (9th Cir. 1998) (defendant was charged with "simple homicide" under Mexican law but the court determined it was felony murder because it happened during the course of a robbery and therefore the statute of limitations did not apply). In the instant case, the facts regarding Mr. Garfias's conduct alleged in the arrest warrant supports a charge of aggravated homicide, *i.e.*, first degree murder. The arrest warrant states that Mr. Garfias "disarmed" the victim, who was laying on the ground, and then "shot him three times with that firearm." *See* Mot. to Dismiss, Attach 5 at JGCG 0179-0180. This supports the claim that Mr. Garfias's conduct was "willful" and "deliberate," and that his crime is most similar to first degree murder. Based on the arrest warrant, the request for extradition, and the supporting documents, the Court concludes that Mr. Garfias's

6

1 conduct is analogous to the conduct required for first degree murder, and therefore the statute of
2 limitations does not apply.

        2. <u>Tolling the Statute of Limitations for Criminal Case 17/99</u>

Even if the five-year statute of limitations applied to Mr. Garfias charges of homicide, the Court finds the statute of limitations was met. Mr. Garfias contends that the arrest warrant was not enough to toll the statute of limitations because it did not "prosecut[e] or enforc[e] the penalty for the offense" under Article 7. Extradition Treaty. However, the Ninth Circuit has held that the issuance of an arrest warrant by the requesting party is sufficient to toll the statute of limitations. *See*, *e.g.*, *Causbie Gullers v. Bejarano*, 293 Fed.Appx. at 489 ("there is no requirement in the Treaty or otherwise that Mexican proceedings must be commenced by an indictment of the type commonly used in criminal proceedings in the United States"); *Caplan v. Vokes*, 649 F.2d 1336, 1340 (9th Cir. 1981) (the statute of limitations was measured from the date of the foreign countries arrest warrant). The reason for this rule is that it would be "inappropriate to engage in such an inquiry into the formal procedures a country uses in instituting prosecution." *See Causbie Gullers v. Bejarano*, 293 Fed.Appx. at 489 (*quoting Theron v. U.S. Marshal*, 832 F.2d 492, 499-500 (9th Cir. 1987) (*rev'd on other grounds by United States v. Wells*, 519 U.S. 482 (1997)). Relying on issuance of an arrest warrant obviates that inquiry. In the instant case, the arrest warrant for criminal case 17/99 was issued by the Mexican government on February 2, 1999 -- less than three months after the offenses in criminal case 17/99 took place. Accordingly, the five-year statute of limitations, even if it applied, was met.

///
///
///
///
///
///
///
///

### III. CONCLUSION

For the foregoing reasons, Mr. Garfias's motion to dismiss the extradition under Article 7 of the Extradition Treaty is **DENIED**.

This order disposes of Docket No. 24.

IT IS SO ORDERED.

Dated: August 20, 2009

_____
EDWARD M. CHEN
United States Magistrate Judge